UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **LINDA MARIE HEBERT,** | ) | NO. CV 15-8554 (KS) |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM AND ORDER** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## INTRODUCTION

Plaintiff Linda Marie Hebert ("Plaintiff") filed a Complaint on November 2, 2015, seeking review of the denial of her application for Supplemental Security Income ("SSI") disability benefits. (Dkt. No 1.) On December 7 and 14, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkts. No. 12, 14.) On January 15, 2015, Defendant filed an Answer to the Complaint (Dkt. No. 16) and a Certified Administrative Record ("A.R.") (Dkt. No. 17). On May 3, 2016, the parties field a Joint Stipulation ("Joint Stip.). (Dkt. No. 20.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff was 42 years old on the date of her application and, thus, was defined as a "younger individual age 18-49" under Social Security agency guidelines. (A.R. at 14; *see* 20 CFR § 416.963.) Plaintiff alleged disability due to hypertension, heart murmur, thyroid problems and psychological problems. (A.R. 120.)

Plaintiff filed an application for SSI on October 5, 2012, alleging disability beginning June 1, 2008. (A.R. 65, 99-106.) Her application was initially denied on June 5, 2013. (A.R. 66-70.) Plaintiff filed a written request for hearing on July 23, 2013. (A.R. 71-73.) Plaintiff was represented by counsel and testified before Administrative Law Judge Alexander Weir III (the "ALJ") on January 29, 2014. (A.R. 22-44.) Ruth A. Arnush, an impartial vocational expert ("VE"), also testified at the hearing. (A.R. 40-43.) On April 1, 2014, the ALJ denied Plaintiff's claim, concluding that Plaintiff had not been under a disability within the meaning of the Social Security Act since October 5, 2012 because: (a) she did not have a severe impairment under 20 C.F.R § 416.920(c); and (b) Plaintiff had engaged in substantial gainful activity ("SGA") after her application was filed. (A.R. 9.) Plaintiff requested review of the ALJ's decision by the Social Security Appeals Council, which denied review on September 8, 2015. (A.R. 1-3.) Plaintiff then timely commenced this civil action.

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five step sequential evaluation process outlined in 20 C.F.R § 416.920(a), at step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity since October 5, 2012, the date of her application. (A.R. 12.) Specifically, the ALJ found that Plaintiff had engaged in substantial gainful activity in October, November, and December 2012, but had not engaged in substantial gainful activity after December 31, 2012.

(A.R.13.) The ALJ based his conclusion on Plaintiff's certified earnings record that showed she had self-employment earnings in 2012 of $13,409. (A.R. 112.) Plaintiff also testified at the hearing that she was paid for caring for her uncle. (A.R. 29.)

At step two, the ALJ found that Plaintiff had medically determinable impairments of mental depression, hyperthyroidism, hypertension and drug abuse, in remission. (A.R. 13.) However, the ALJ considered these impairments not severe "because they are only slight abnormalities that have no more than minimal effect on the [Plaintiff's] physical or mental ability to perform basic work activities." (*Id.*) The agency determined that Plaintiff's medically determinable impairments had not "significantly limited (or [were not] expected to significantly limit) the ability to perform basic work-related activities for twelve consecutive months," therefore, Plaintiff does not have a severe impairment or combination of impairments. (*Id*.) Based on the findings that Plaintiff had engaged in substantial gainful activity after the application date and that Plaintiff does not have a severe impairment or combination of impairments, the ALJ concluded that Plaintiff has not been under a disability since October 5, 2012. (A.R. 17.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

# DISCUSSION

## I. Disputed Issue

Plaintiff raises the following issue: that the ALJ erred in determining that Plaintiff's mental impairment is non-severe. (Joint Stip. at. 2.)

## II. Legal Standard

At step two, the ALJ must determine whether a claimant has a medically determinable impairment or combination of impairments that is "severe." 20 CFR § 416.920(c). In

making this inquiry, the ALJ "must consider the combined effect of all of the claimant's impairments on h[is] ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert,* 482 U.S. 137, 153-54 (1987)).

Social Security regulations provide that, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). The regulations define "basic work activities" as including: use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

"An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotation marks omitted). If "an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.* at 687 (citation and internal quotation marks omitted). "Step two, then, is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.* (emphasis added) (citations and internal quotation marks omitted).

**III. The Parties' Positions**

Plaintiff argues the ALJ ignored record evidence indicating that Plaintiff's mental impairments, including depressive disorder, bipolar II disorder, and chronic post-traumatic

5

stress disorder ("PTSD"), "more than minimally" affect her ability to perform basic work activities. (Joint Stip. at 3-6.) Specifically, Plaintiff points to her ongoing mental health treatment between March 2012 and December 2013 during which time her healthcare providers gave her GAF[1] scores ranging from a low of 49 to the mid-60's, indicating "moderate", "mild" and occasionally "serious" symptoms. (*See* Joint Stip. at 3-4; *and e.g.*, AR 255, 256, 277.) In June 2012, she was seen by Dr. Sagart who noted Plaintiff was "very depressed" and assigned a GAF score of 51, which indicates "moderate" symptoms. (A.R. 284.) Plaintiff also had GAF scores in the 50s in February 2013 (A.R. 269), June and July 2013 (A.R. 332, 335), September 2013 (A.R. 308-09) and December 2013 (A.R. 299). In 2013, during a period of severe depression, Plaintiff twice received a GAF score of 49, indicating "serious" symptoms. (Joint Stip. at 5; A.R. 260, 261.)

Defendant responds that the medical records undermine Plaintiff's contention that the ALJ should have found her mental impairments to be severe. (Joint Stip. at 7.) Defendant also argues that the fact of a medically determinable impairment or condition does not automatically equate with a determination that the symptoms are "severe" or "disabling" as defined by the Social Security Regulations. (*Id.*) In reply, Plaintiff reiterated her initial contentions. (Joint Stip. at 16.)

\\
\\
\\
\\
\\

---

[1] "GAF" refers to the Global Assessment of Functioning, a numerical scale used by clinicians to evaluate an individual's overall psychological, social and occupational/school functioning level. *See*, American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* (4th ed. 2000) at p. 34. The Commissioner has stated that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings," 65 Fed. Reg. 50764, 50764-65 (Aug. 21, 2000), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2012).

6

## IV. The ALJ Failed to Properly Assess The Relevant Medical Opinions At Step Two

### A. The ALJ Failed to Properly Assess The Records Of Plaintiff's Treating Psychiatrist

After determining that Plaintiff had medically determinable mental impairments, the ALJ considered each of the four functional areas outlined in the disability guidelines for evaluating mental disorders: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. (A.R. 14 (citing 20 CFR, Part 404, Subpart P, Appendix 1).) The ALJ found that the objective medical evidence showed no restriction in Plaintiff's activities of daily living; mild difficulty in social functioning; mild difficulty with regard to concentration, persistence or pace; and no episodes of decompensation of extended duration. (A.R. 14.) The ALJ stated that his decision was based on a consideration of "all the evidence" and concluded that Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas." (A.R. 9.)

Section 423 of the Social Security Act requires that the Commissioner consider all of the evidence available in a claimant's case record, including evidence from medical sources. 42 U.S.C. § 423(d)(5)(B); *see also* 20 CFR § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). Here, however, the ALJ failed to include (or explain his failure to consider) critical mental health diagnoses identified in her medical records. Specifically, in August 2012, Plaintiff's treating psychiatrist, Dr. Elahe Sagart, diagnosed Plaintiff with chronic posttraumatic stress disorder ("PTSD") and bipolar II with recurrent depressive and hypomanic episodes. (A.R. 252.) In August 2013, Dr. Sagart again diagnosed Plaintiff with chronic PTSD (A.R. 327) and noted that Plaintiff's nightmares interfered with her daily activities (A.R. 318). In September 2013, Dr. Sagart's Monthly Treatment Report indicates that Plaintiff was "struggling with anxiety which interferes with

1  attendance," and that Plaintiff suffered "debilitating fear" that interfered with her social and
2  daily activities. (A.R. 316.) Despite these findings by the treating psychiatrist, the ALJ only
3  mentions the PTSD and bipolar II diagnoses in passing and did not include either of these
4  diagnoses in the list of mental impairments. (*See* A.R. 1.) Instead, the ALJ's list of
5  medically determinable impairments identifies "mental depression" as the only mental
6  impairment and the other identified impairments relate to physical, not mental, diagnoses,
7  *i.e.*, "hyperthyroidism; hypertension; and drug abuse, in remission." (*Id*.)

9  As a treating physician, Dr. Sagart's opinions are entitled to "substantial weight."
10 *Bray v Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citing *Embrey v.*
11 *Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Further, the ALJ must articulate a "substantive
12 basis" for rejecting a medical opinion or crediting one medical opinion over another.
13 *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In particular, the ALJ must provide
14 "clear and convincing" reasons for rejecting an uncontradicted opinion of an examining
15 physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). When evidence in the record
16 contradicts the opinion of a treating physician, the ALJ must present "specific and legitimate
17 reasons" for discounting the treating physician's opinion, supported by substantial evidence.
18 *Id.*

20 Here, the ALJ provided no discussion of Dr. Sagart's findings and no explanation for
21 why he adopted consultative psychiatrist, Dr. Ernest A. Bagner, III's general diagnosis of
22 "major depressive disorder" rather than Dr. Sagart's diagnoses of chronic PTSD and bipolar
23 II disorder. Further, although the ALJ accorded Dr. Bagner's opinions "some weight" (A.R.
24 16), he failed to articulate a substantive basis for crediting Dr. Bagner's opinions over Dr.
25 Sagart's. *See Garrison*, 759 F.3d at 1012. An ALJ errs when, as here, he discounts a
26 treating or examining physician's medical opinion, or a portion thereof, "while doing
27 nothing more than ignoring it, asserting without explanation that another medical opinion is
28 more persuasive, or criticizing it with boilerplate language that fails to offer a substantive

basis for his conclusion." *See id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). Moreover, because Dr. Sagart treated Plaintiff for more than a year and provided extensive medical notes and records reflecting Plaintiff's mental health difficulties, prescriptions, and medication adjustments, the ALJ could not reject Dr. Sagart's opinions on the ground that they were "brief, conclusory, and inadequately supported by clinical findings." *See Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002) ("ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). For these reasons, the Court finds that the ALJ erred by failing to provide any substantive basis, let alone the requisite specific and legitimate reasons, for rejecting diagnoses assessed by Plaintiff's treating psychiatrist.

**B.     The ALJ Failed To Properly Consider The Opinions Of The Examining Psychiatrist And Reviewing Psychologist**

"An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work." *Webb,* 433 at 686-87; *see also* Soc. Sec. Ruling 85-29 ('A claim may be denied at step two only if . . . a finding [that the relevant impairment are not medically severe] is clearly established by medical evidence[.]" Under Social Security regulations, an ALJ must find a mental impairment severe when a claimant suffers moderate limitations in activities of daily living, social functioning, or concentration, persistence, or pace, or has "more than a minimal limitation on [her] ability to do basic work activities." 20 C.F.R. § 416.920a(d)(1).

The ALJ's step two determination that Plaintiff's mental impairments are non-severe appears to be based largely on a consideration of Plaintiff's GAF scores which generally indicate slight limitations except for two instances where Plaintiff received GAF scores of 49

indicating "serious" symptoms. (A.R. 260, 261, 266; *and see* Joint Stip. at 3-5.) The ALJ also relied on record evidence indicating that, throughout 2012 and 2013, Plaintiff seemed to be striving towards employment. In July 2012, Plaintiff reported to Dr. Sagart that she was unemployed but "looking for a job." (A.R. 281.) Similarly, in August 2012, Plaintiff reported that she was "still looking for a job." (A.R. 252.) Dr. Sagart changed Plaintiff's medication to address continued depression, but noted that Plaintiff's thought process was "linear" her judgement "good" and her insight "fair." (*Id*.) However, the record evidence also shows that Plaintiff's psychological stability depended on a regimen of numerous medications, which had to be adjusted periodically to effectively manage her symptoms. (*See e.g*., A.R. 252 (increase Pristiq); A.R. 261 (discontinue Remeron, increase Wellbutrin, start on Ambien); A.R. 266 (re-start on Remeron, discontinue Trazodone and continue Wellbutrin).) By August 2013, Plaintiff's mental health conditions were being treated with multiple medications, including Seroqul, Viibryd, Remeron, Wellbutrin X, Abilify, and Ambien, and, even with these medications, Plaintiff reported to Dr. Sagart that she was suffering panic attacks, agoraphobia, and "repeating nightmares that someone comes inside her room and slashes her throat and she watches herself bleed to death." (A.R. 327.) The ALJ nonetheless concluded that Plaintiff's mental impairments were not severe based on his determination that her impairments did not more than minimally affect her ability to perform basic work activities.

In March 2013, Plaintiff underwent a complete consultative psychiatric evaluation with Dr. Ernest A. Bagner, III. (A.R. 232-35.) In his functional assessment, Dr. Bagner, found Plaintiff's ability to follow simple, oral and written instruction was not limited and Plaintiff had only mild limitations in her ability to follow detailed instructions, interact appropriately with the public, co-workers and supervisors, and to comply with job rules such as safety and attendance. (A.R. 235.) However, he also found that Plaintiff experienced moderate limitations in her ability to respond to changes in routine and to work pressure in a work setting, and he determined that Plaintiff's "daily activities were moderately limited."

(*Id.*)  Dr. Bagner further concluded that Plaintiff is not able to manage her own funds and his prognosis from a psychiatric point of view was "fair with continued treatment."  (*Id.*)  The ALJ gave Dr. Bagner's opinions "some weight" (A.R. 16), but provided no explanation or comment about why he disregarded Dr. Bagner's findings of moderate limitations in work-related activities when determining that Plaintiff's mental impairments were not severe.  As stated above, an ALJ's failure to articulate any substantive basis for discounting an examining physician's opinion constitutes legal error and requires reversal.  *See Garrison*, 759 F.3d at 1012; *Smolen,* 80 F.3d at 1282 (finding legal error where ALJ, without explanation, ignored medical evidence of impairments).

In April 2013, state agency psychological consultant, Anna Franco, Psy.D., reviewed the evidence of record and concluded that Plaintiff had affective disorders and anxiety related disorders, but determined that her condition "is not severe enough to keep [Plaintiff] from working."  (A.R. 63.)  The ALJ did not indicate what weight he gave to the reviewing psychologist's opinions or why, but he appears to have adopted her opinions in full.  (*See* A.R. 17.)   However, the Ninth Circuit has long emphasized that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justified the rejection of the opinion of either an examining physician or a treating physician." *Lester,* 81 F.3d at 831 (internal citation omitted.)  Dr. Franco's findings are inconsistent with the opinions of both the treating psychiatrist and the examining psychiatrist, but the ALJ provided no indication that he considered or resolved this conflict in the medical testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities") (internal citation omitted). The ALJ erred in failing to do so.  Accordingly, on remand, the ALJ must reconsider the opinions of Dr. Sagart, Dr. Bagner, and Dr. Franco and articulate a substantive basis, supported by legally sufficient reasons, for discounting any portion of any of their opinions.

## V. The ALJ Failed to Provide Clear and Convincing Reasons for Discounting Plaintiff's Credibility

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015). The ALJ must "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick*, 157 F.3d at 722). Further, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

The ALJ noted that he found Plaintiff "not fully credible" as to the severity of her mental impairments and functional limitations. (A.R. 16.) He explained that the "treatment record from Detection and Treatment Resources, Inc. did not contain any report of such symptoms or issues [as Plaintiff described]," but showed that Plaintiff's mental condition improved with medications. (*Id.*) However, as noted above, however, the ALJ wholly ignored Plaintiff's diagnoses of PTSD and bipolar II disorder "recurrent with depressive and

hypomania," which were clearly indicated in the Detection and Treatment Resources monthly treatment reports. (A.R. 237.)

The ALJ also pointed to Plaintiff's plan to "start volunteering at a school" in January 2013 as a basis for discounting Plaintiff's credibility. (A.R. 15, A.R. 242.) However, there is nothing in the record to indicate that Plaintiff actually succeeded in volunteering anywhere and, if so, what her responsibilities may have been, or how frequently or how many hours per day, Plaintiff may have volunteered. Moreover, the ALJ never asked Plaintiff about volunteering at the hearing.[2] Thus, the ALJ's reasons for discounting Plaintiff's credibility as to the severity of her mental symptoms are not specific, clear, convincing, and supported by substantial evidence in the record, and the ALJ must reevaluate Plaintiff's credibility on remand.

**VI. The ALJ Failed To Develop The Record Regarding Plaintiff's 2012 Earnings**

Besides the step two "not severe" determination, the ALJ also concluded that Plaintiff was not disabled because she had engaged in substantial gainful activity in 2012. (A.R. 12-13.) Plaintiff's certified income records show that she earned $13,409 for work performed after she filed her application – that is, in October, November, and December of 2012. (A.R. 112.) Plaintiff testified that she was paid for caring, and, specifically, cooking, for her uncle. (A.R. 39.)

---

[2] Even if Plaintiff did volunteer periodically, that would not, without more, require a determination of nondisability. The ALJ must first "inquire whether the claimant has 'residual functional capacity for work activity *on a regular and continuing basis.*' 20 C.F.R. § 416.945. "'Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability.'" *Lewis v. Apfel,* 236 F.3d 503, 516 (9th Cir. 2001) (*citing Lester,* 81 F.3d at 833 (emphasis in original)); *see also Garrison*, 759 F.3d at 1017 (an ALJ may not reject a plaintiff's testimony about mental health symptoms "merely because symptoms wax and wane" or because the record contains evidence of "instances of improvement over a period of months or years").

Disability is defined as the inability "to engage to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The agency regulations include guidelines to determine whether work qualifies as substantial gainful activity:

> We will generally consider work that [the claimant] is forced to stop after a short time because of [his] impairment as an unsuccessful work attempt and [his] earnings from that work will not show that [he is] able to do substantial gainful activity.

20 C.F.R. § 416.974(a)(1); *see also* Soc. Sec. Ruling 84–25.  A work effort that lasts three months or less because of the claimant's impairments is an "unsuccessful work attempt," and is not considered evidence of an ability to engage in substantial gainful activity. *Gatliff v. Comm'r of Soc. Sec. Admin.,* 172 F.3d 690, 692 (9th Cir. 1999) (citing Soc. Sec. Ruling 84-25, 1984 WL 49799 (1984)). "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." *Lewis,* 236 F.3d at 515.

Plaintiff earned $13,409 over a three month period in 2012.  (A.R. 112.)  The ALJ determined that Plaintiff had no substantial gainful activity after December 2012.  (A.R. 13.) At the hearing, Plaintiff testified she took care of her uncle during that period and received $20 when she cooked for him.  (A.R. 39.)  The ALJ did not ask Plaintiff why she stopped doing this work after only three months, he merely averaged her earnings over the entire year and concluded that because the average monthly amount exceeded the minimum SGA, Plaintiff was not disabled.  (*See* A.R. 39, 13.)  As a result, there is insufficient development of the record to determine whether the three months of earning constitutes SGA or, rather, an "unsuccessful work attempt."  Upon remand, the ALJ must further develop the record to

14

determine whether, in fact, Plaintiff's three months of earnings actually meet the agency requirements for substantial gainful activity.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REMANDED for further administrative proceedings.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiffs and for Defendant.

LET JUDGEMENT BE ENTERED ACCORDINGLY.

DATED: October 13, 2016

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE